May it please the Court, I'm Michael Lilly. I represent the Bofin Submarine Museum. Let me ask you one question before you start. Are there negotiations going on at the moment? No, Your Honor. I had a feeling from one of the briefs that they were. Have they proved unsuccessful? The Bofin is being operated on a month-to-month with the Navy without a lease. There is no current lease. Right, but are you still negotiating? There's no negotiations going on right now. The Navy has taken the position that the lease is going to be subject to the outcome of this appeal. And so until this appeal is completed, there's not going to be any movement on the lease. Well, okay, we'll have to ask the Navy that question. I mean, there are two kinds of negotiations. I was not really talking about negotiations regarding the terms of the lease. I was talking about negotiations regarding the settlement of the dispute. There isn't any with the Bofin. The Navy has taken the position as the March 30, 2010 letter agreement that they secretly entered into between the State and the Navy that they're going to impose the Randolph-Shepard Act on the Bofin and any new lease. And that's been the position. But the Navy, and I submitted a letter from the Navy in the prior motion to continue the briefing, where it's clear the Navy has been taking the position that they're not going to, that any lease is going to be subject to the outcome of this appeal. So pending this appeal, there's been no negotiation. Are there any relief in this case? Pardon me? How can you get any relief in this case? That's redressability. First of all, I haven't found, I couldn't find, and the Navy hasn't pointed out whether that was raised below. And I think under this Court's blockage. Well, it was raised to standing. Well, first of all, if we have standing, it is redressable. I'll make the position, I take the position that it is redressable. What would the Court do for you? Well, first of all. You provided the other judgment, which you now did. You attempted to intervene in that other proceeding. It wasn't successful. You appealed. You abandoned your appeal. That judgment's final. That judgment's final. We couldn't become a party to it, and we didn't see how we could get any relief in that case. But in this case, you remanded back. If you give both in standing, and I don't think redressability is a significant issue, because under the, I think it's the Lujan case, one of their footnotes is, and it's noted in other cases, that we don't have to prove that we will prevail below in terms of redressability, and also that our interests, we can assert our interests without meeting all the normal standards for redressability and immediacy. So we go back below. If we have standing, we can say that under the Randolph-Shepard Act, as the Navy took the position early on before Judge Ezra's original decision, the Navy took the position in the Sullivan memo that the Randolph-Shepard Act did not apply to the BOFIM for a number of reasons, and the early arbitration panel ruled that it did not apply to out-lease properties and it relied on legislative history in the Randolph-Shepard Act to say that if you don't have any federal employees on the property, which we don't have, if you don't have any federal buildings on the property, which we don't have. I thought that the case sort of eliminated that arbitration result. I agree that as between the Navy and the state before Judge Ezra, that was Ezra's conclusion. I don't think that's the end of the matter, because now the BOFIM is here, and if we went back to Judge Ezra with standing, we can assert that if the Randolph-Shepard Act applies to the BOFIM, then we have the right to assert any defenses to that. We have the right to assert that the blind don't have a right to move into an out-leased property where there's no federal buildings and no federal employees as a defense. In other words, we're in compliance by the Department of Education regulations and by the Department of Defense regulations. We're in compliance with the Randolph-Shepard Act, and that's our redress. Suppose the Navy just decides that it wants to apply this blind preference in all of its contracts. Well, that could... Maybe they're not compelled by the Randolph-Shepard Act. We say no. We say we can go to court and say they can't force that on us. And I think... But do they have to give a contract to you? I think it's really speculative what the Navy may do. The most, the best... I'm just asking legally. If the Navy decided that it didn't want to have contracts unless it could protect the blind by giving a preference because it thought the policy of the Randolph-Shepard Act was a good policy, and it just adopted that as a policy, what right would you have to say no, they can't do that? Well, that's not what they've told us. The Navy's told us that they're... Right, but I think theoretically we're talking about... Theoretically... Theoretically, would you have any redress? We say no. That's part of the lease negotiations. We say no, the Randolph-Shepard Act doesn't apply to us. You can put in your lease that Bofin is to comply with the Randolph-Shepard Act, and we don't have a quarrel with the purposes behind the Randolph-Shepard Act. They're noble. What we're saying is we comply with it, and there's no basis under the law as it's been regulated and under its legislative history for imposing a priority or a facility on the Bofin, and in those negotiations we say no, we won't agree to any specific terms that say you will do X, Y, and Z. All right, and then the Navy says, all right, then we're not going to enter into a contract with you. Then we might be in an impasse. And then what? I say we can go to court and say you can't impose a Randolph-Shepard priority as a matter of law on the Bofin when it doesn't apply to the Bofin. Well, how about as a matter of discretion? I mean, let's say there's not even the Act doesn't even exist. Let's say the Navy makes a decision on its own that it wants to put in these preference policy into all of its leases. It doesn't have a right to do that. It maybe has a right to try and do that, but I don't think that's the reason the Navy, and I guess we're going from theory on one side and practicality on the other. The Navy is doing this, as it said in the March 30 letter agreement, is because of Judge Ezra's decision. Prior to Judge Ezra's decision, the Navy's position was two blocks, as we say in the Navy, with the Bofin. We were lockstep. Now they've got Ezra's decision. They say, okay, we're going to follow Ezra's decision and impose it on you. They say Judge Ezra's decision. With Judge Ezra's decision that is on the Navy. The Navy is burdened by that. They have to. They're obligated to, correct? I agree. I agree. Let's play this out a minute. There is standing. You go back to district court. Why doesn't the prior judgment collaterally stop you? We're not in priority. You're not a party. No question about that. We're not a party. We're not in privity. And I can argue that below. That's part of the redressability, that I can argue below. I can go before the court and show a four square why that's not collaterally stopping us. And that we're entitled to our own relief on this record. And maybe. But it's hard to see how that relief would be consistent with the prior judgment. Pardon me, sir? It's hard for me to see how that relief would be consistent with the prior judgment. Certainly Judge Ezra, because he's in this instance, he was on both cases, could say, well, okay, I can tell you what I meant in the prior judgment. But he could also issue declaratory relief that we're not bound by, the BOFIN is not required to have a blind vendor facility. And maybe if we have standing for the first time, we could go over to the Department of Education. Because nothing under the current scheme and under the way the statute is written, do we have any right to go before the Department of Education. But I would argue that if we had standing under the Randolph Shepard Act, that we would then have a right to go to the Department of Education for an arbitration and exhaust remedies and failing that, appeal that. But those are arguments and things that will happen below. And not something that we have, I mean, those are redressability issues. And I don't think the bar is very high in terms of fashioning what a potential relief is for the BOFIN. But the BOFIN is going to be a full partner. If it has standing, it will have a full partner. And I suspect what's going to happen as a practical matter is that withstanding, the state and the Navy and a blind are going to sit down together and this is going to be resolved and it's not going to be a litigated issue. But if that doesn't work. What prevents that from happening now? The blind and the Navy and the BOFIN and the state of Hawaii. If you can do it when it's established that you have standing, why can't it be done now? We certainly told the Navy very clearly that we are not bound by the requirements of having a blind vendor facility on the BOFIN. And the Navy, because of Judge Ezra's decision, wants to impose the Randolph-Shepard Act. And more than just say that we're imposing it. And so we're at loggerheads and the Navy has said, we wait to the outcome of this appeal to see where we go. Well, you said that if we said you had standing, you would then be able to sit down and work this out. Oh, I'm talking in a practical way, Your Honor. If we have standing, the Navy and the state is going to sit down with the BOFIN. That's not going to be a difficult issue to work out. Because once we have standing, then we have a right at the table. Instead of being two chairs at the table, as they had on March 30, there will be three chairs or maybe four chairs because the state also represents the interest of the blind. And we're not antagonistic to the interest of the blind. They have their rights under the Randolph-Shepard Act. We're just saying as an out-leased piece of property that we built our own buildings, we have our non-profit facility, and as a result, we're not required to have a blind vendor facility on there. All on government land, correct? It's government land. I agree with that. But there's no federal property and there's no – I mean, there's no federal buildings and no federal employees. And even – I mean, if you look at the legislative history, it was clear that the blind didn't have unfettered authority or unfettered power. There's another aspect of standing that we haven't touched on, and that's prudential standing. Yes. I think prudential standing is, at least from my viewpoint, is maybe one of the easier ways to approach it because as a non-profit lessee on federal land that doesn't have any federal buildings or employees, we believe that we have prudential standing under the applicable rules. I haven't found any definition of arguably in the law, but apparently it's a pretty low bar in terms of what is arguable. And I say it's arguable because under this court's decision in Stock West, because Stock West operated within the sphere, even though Stock West wasn't an object of the statute, Stock West operated in the sphere of the statute, the standing was self-evident. But we say we're the same thing. We're not the object of the Randall Shepard Act, but we obviously operate within the same sphere because they want to impose it upon us. So that makes it arguable. The fact that the Navy took a different position before Judge Ezra's 2008 decision because the original arbitration decision went at great lengths to look at legislative history, to look at the statute, and show in numerous ways why the Randall Shepard Act doesn't apply to both ends. And then this is an interesting quote out of data processing. It says, quote, where statutes are concerned the trend is toward enlargement of the class of people who may protest administrative action. So what we're seeing is the trend is to be more inclusive rather than less inclusive when you look at the statutes. So like in Lujan, Lujan looked at the legislative history. We've looked at the legislative history. We see the legislative history as looking, if you don't have federal employees, that's one of the targets of the Randall Shepard Act is to provide blind facilities where there are federal employees, but not where there's no federal employees. And also the fact that within the legislative history, it was intended that the administration would limit in some respects the scope of the blind priorities. They wouldn't be unlimited. There are some limitations, and some of those limitations we've talked about, 15,000 square foot buildings, we don't have that, no federal buildings, no federal employees, so that they weren't. That means we have an interest as a lessee of federal land in saying we're a beneficiary of some of those, and so under the NCUA case, we have an interest in limiting the blind vendors from imposing themselves into the Bofin property. I'll reserve any final comments. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. The Randall Shepard Act is a statute designed to help blind people. The Navy, which is regulated by that Act, has decided to comply with it, and indeed to comply with the district court decision to that effect. Bofin is not regulated by the Act, but Bofin is basically trying to block the Navy's attempts to now comply. The decision that- Suppose you were not required by the Act to do this. I'm sorry, Your Honor, I didn't- Suppose you were not required by the Act to do this. Would it be the Navy's position that it would still want to do this? So assuming that the Act didn't apply and assuming that there wasn't the prior district court decision and assuming that the Navy- No, assuming that the Navy adopted its prior position before the litigation that it didn't apply, what would you do? I'm sorry, Your Honor? Never mind. Just answer the question. Sure. Assuming, as we sort of pointed out in a brief, there are about four different reasons that at this point the Navy would be obligated to comply, the prior district court decision, the prior agreement that's been entered into with Hawaii. If none of those were in place, Your Honor, I don't know exactly what the Navy would do, but it's of course the case that any time someone seeks even a purely advisory opinion from a court, there still might be some party who responds to the advisory opinion. That's not itself enough to satisfy the redressability requirement. Rather, it has to be that the court's order would actually require the change that the plaintiffs are seeking, and here it wouldn't. I mean, to be honest, Your Honor, the Navy, as a regulated entity, obviously will have to make various choices about how and whether and when to comply with the applicable regulations, and it's true that any time a regulated entity responds to regulations, its response may in turn have downstream effects on other people, and that's not just true of the government. That's true of a private party. But as a government agency, you have certain regulations that apply to your leasing, and those are governed by the Administrative Procedures Act and others. You have to change the regulations. You have to give notice. You have to have a comment, period, and there's a decision. It appears to me in this case that you're adding to the Navy regulations with respect to leasing without going through the administrative process. So, Your Honor, if I could point you to 10 U.S.C. 2667. It's one of the two statutes we cite in our brief, which are the statutory authority for the Navy outleasing property. The standard in there is that they include such other terms as would, quote, be in the public interest. Right. But you do have also, in a series of regulations, a fair degree of specificity on some of the leases. So here you've had a lease that doesn't have this requirement, and now you say, as a matter of law, we are subject to this requirement. That's a little bit different from saying, from making a discretionary determination that you want to add a provisional lease that might be in the public interest. Well, certainly, Your Honor. In other words, my point being this. The Navy can do whatever it wants to on its leasing. Say, we want to lease this on whatever terms you can negotiate, but if you say we have to do this and it affects people that have other interests and you don't allow them opportunity to comment, it seems to me that there's an argument that the decision you made with the state was a final agency action that might be subject to APA. Well, I think I have a couple of things to say in response to that. First of all, I don't understand Plaintiff's lawsuit, at least explicitly, to have been an APA action premised on this agreement being final agency action. I understand. Although, in some sense, they really are just trying to recharacterize their contract negotiation as an APA action, I think they've actually intentionally avoided trying to do that. So I think that what Your Honor is talking about is a somewhat different suit. To the extent that a party is unhappy with a contract negotiation or a term which has been included in it and wants to challenge that, obviously there's a whole separate doctrine about how disappointed bidders can respond. Well, no, I understand that. I guess what I'm driving at is that the Navy is imposing a uniform regulation and saying we're bound as a matter of law to have this in all of our leases. And it's doing that unilaterally in a settlement of another suit without allowing the affected parties notice and comment a chance to appear. I'm just struggling with that concept because basically you're saying we can make a legal determination that this applies or a policy determination. We're going to apply it uniformly. We don't have to tell anybody about it. Sure. I guess if I could say two things in response to that. First of all, Your Honor, a decision, I mean, even in the most formal sense, a decision about what term would be included in a lease, as far as I know, is not the sort of formal rulemaking subject to notice and comment. And second of all, Your Honor, it seems like the concern that Your Honor is expressing would actually have to be addressed by something like formal notice and comment. Because remember, although here it so happens that BOFIN has already been leasing the property and would like to renew its lease, obviously the Navy can lease to anyone else. And a new party could come along and say, I want to lease the property. And the Navy could say, here are the terms we want to lease it at. And the new party could say, well, gosh, you're forcing that term on us. We're unhappy about it. And then complain that years ago they should have been given the opportunity to. And I think that just goes to show why it is that every time the government offers that. Well, if the Navy hadn't taken the position before Judge Ezra that this regulation didn't apply to the BOFIN and others, I mean, I guess I might view it differently. But it changed its litigating posture. It changed its interpretation of the statute. Well, I mean, the government lost in the district court. And then it made the discretionary decision. It decided that it was in the best interest of the United States and the public interest, that it would give in to that decision and it would go ahead and it would negotiate a lease accordingly. And if I could actually just challenge a couple of the factual premises that my friend brought up in his argument, what happened at that point is obviously the Navy still had a great deal of discretion about how it was to satisfy its Randolph Shepard obligations. And Hawaii initially wanted the Navy to try to force some term onto BOFIN while their old lease was still going on. The Navy refused to do so. They worked out an agreement with Hawaii which said, look, just when it's time to have a new lease, we're going to include a term in that new lease. And just this isn't on the record, but just to reiterate to your honors what has happened since then, there have been negotiations that have gone on. And maybe this gets to the questions that you were pressing at Judge Reinhart. There have been negotiations going on between the Navy and BOFIN and the State of Hawaii. And those negotiations have done two things. First of all, they've created a price for a lease. There is now a new lease which has been agreed to in principle but which BOFIN has not been willing to execute, I think because they may believe that that will moot this case. That new lease has a price. That price was worked out by an appraiser. That appraiser determined the fair market value of the property, including a term which required some kind of Randolph Shepard compliance. So to the extent that the sole allegation in their complaint is that there's a financial injury for them, that's being taken into account in the pricing of that lease. And the way that the Randolph Shepard Act, and just to make this very clear, the way that the Navy will comply with the Randolph Shepard Act on this property,  has been worked out in negotiations between BOFIN and the Navy and the State of Hawaii. And they've worked out this particular set of terms whereby there won't be a, quote, blind vendor preference on the property, but rather there will be limitations in the amount of vending that can go on on the property and a certain percentage of revenue generated by vending machines, this is another term that exists in the Randolph Shepard Act, will be given to the Department of Human Services of Hawaii for the use of its Randolph Shepard Fund. And so they have all sort of worked out basically how it is that this can move forward. And BOFIN and the Navy have entered into an agreement in principle, but just not executed the agreement. And I'm not sure how it is that the Navy could then engage in, I guess, a formal notice and comment rulemaking process. Hold on. If there is, let's assume for the moment there's an agreement, what would the effect be of, is that agreement, would that agreement go into effect only if BOFIN did not have standing, or either way, what? My understanding, Your Honor, you're talking about the new lease that has been agreed to in principle. What is holding up the new lease? The Navy has been ready to execute it. And at some point during actually the dependency of this appeal, I was told that BOFIN was planning to execute it. And as Your Honors can see, this is in the record of the case, the parties actually sought extension motions pointing out that they thought there was a possibility the case would be moved in. What I'm asking is what is holding this up? What's the difference between whether BOFIN becomes a party to the litigation or it doesn't? Why is it going to be the same lease no matter what happens? My understanding is, yes, I know that my friend just suggested otherwise, and that's really the first that I'm hearing of it. And I should say, by the way, that the month-to-month agreement that BOFIN is proceeding on right now has the identical terms to the new lease, which has been agreed to in principle, which the Navy has signed off on on all levels. And my understanding is it's essentially just a BOFIN signature away from being executed. I guess you're not the one to ask. But it's hard for me to understand what it is about this suit, BOFIN suit, going ahead. Would that in any way change the terms of the lease if they won the suit? Would they not be willing? I can't imagine that it would, Your Honor. And I certainly haven't been told that by anyone at the Navy. I mean, the Navy believes that it's bound by the prior district court decision. Even if it weren't, the Navy believes that it has entered into an agreement. It's on ER-233, if you want to take a look at it, an agreement with Hawaii, which nonetheless would obligate it to include these sorts of terms in its lease. And even if none of that had happened, obviously the Navy could still treat the prior district court's decision as persuasive. I mean, the district court obviously wrote a well-reasoned decision about why the Randolph-Shepherd Act would apply. So I don't see why it is that a different lease term will necessarily pop up other than would be true if a court issued any advisory opinion, which is just sometimes if there's something in a court opinion, someone might find it persuasive. And in that sense, I don't think that BOFIN has come close to meeting the redressability requirement. Are there any exceptions to the applicability of the Randolph-Shepherd Act? I'm sorry, Your Honor? Are there any exceptions, like he was arguing, like counsel was arguing just a few minutes ago? In terms of when the Randolph-Shepherd Act applies on federal— so my understanding, obviously this isn't sort of directly raised in the case, but my understanding is it's a statutory matter. The Randolph-Shepherd Act will, quote, apply. But then there are various questions about how and if it needs to be implemented at all. And I think actually the district court here recognized—actually the district court in both the first and second case here recognized that when it said, look, if there are kind of exceptional interests to the contrary, the United States doesn't have to give any sort of preference. And of course, it only has to give so much of a preference. And so if there wasn't a highly competitive blind vendor that came in, the blind vendor wouldn't need to get that sort of benefit. But here, I think just at a somewhat high level of generality, based on the district court's first decision, which, by the way, according to the first district court, when plaintiffs sought to intervene, plaintiffs knew about, and plaintiffs nonetheless waited a year in which to intervene, that district court said the Navy was obligated by the Randolph-Shepherd Act. And remember that all that first district court was doing was just reversing the Department of Education's administrative decision. It wasn't ordering anything beyond that. And then the Navy said, okay, well, now we're just going to figure out how it is that we need to move forward and comply. And to the extent that plaintiffs here have various arguments about why it is that maybe the Navy is misunderstanding its own obligations, these are the same sorts of arguments that anyone could make when any regulated entity thinks that it's trying to respond to regulations and is maybe mistaken in doing so. But that doesn't give them Article III standing and certainly doesn't give them prudential standing. And if I could just point out, in addition to the zone of interest matter that my friend was discussing, essentially what he's doing, unless he's kind of changing the focus of his case into a challenge to a contract negotiation, in which case there's a new set of jurisdictional problems for him, but I think essentially he's just asserting the Navy's rights. He's saying that the Navy shouldn't be bound by the Randolph-Shepherd Act on this property, and that's just a classic problem of third-party standing, which is foreclosed by this court's McCollum and this court's Poney cases. And I just want to make this clear. So they sought deck – I guess they're seeking deck relief. Declaratory judgment. That's right. And it rises in the context of a contractual agreement. Correct? I guess in the context of the current contractual negotiation between them, yes. But why can't they seek deck relief that this Act doesn't apply to them? Well, so, again, first of all, I don't see why that would satisfy any redressability requirement, because the Navy could still and arguably is still required to include that term. Second of all, there's obviously an entire – But suppose the district court said, well, you know, suppose the district court bought your argument that there are no federal employees involved here, so therefore the Randolph-Shepherd Act doesn't apply. So even if it didn't apply, they could still – because remember, the statute doesn't say just do what the Randolph-Shepherd Act says. Rather, the contract, which has now been worked out in principle, just has specific terms. And obviously the Navy, if it thought that that was in the public interest or if it thought that it was in the public interest for the Navy to not violate the agreement that it had made with Hawaii at this point, could then include those terms. And to the extent that what my friend is doing is just challenging the contract negotiation, there's a system through the Contract Disputes Act through which he can do that. There's an entire set of regulations. I think the argument goes something like this, and he may not know particularly. If we have sanity, we can go back to district court. Judge Ezra can interpret his old judgment as not requiring the Navy to impose the terms of the Act. Given that discretion, the Navy might choose not to apply the Act, and therefore I've lost the chance at making the negotiation or arguing that it doesn't apply. So it's a little bit attenuated, but they're arguably within the zone of interest in doing that because what the Navy might want to do with respect to its obligation or the agreement that it entered into to implement the judgment might be far different than it might exercise in terms of pure discretion. Sure. The behavior might be different. So he's lost a chance is what he's saying. Sure. I'm sorry, Your Honor, I heard the term zone of interest, but it sounded like that was actually more a discussion of redressability. I want to make sure that I'm addressing the – were you speaking about redressability? Yes. So I think when Your Honor said that that's a bit speculative, I think that's actually more than a bit speculative. First of all, I don't know that Judge Ezra can, quote, reinterpret his prior decision to say that his prior decision literally means the opposite of what it said. I mean, the prior decision said the Randolph Shepherd Act is applicable to its property, so I don't know that they could now ask him to – But his argument is let Judge Ezra – it's different from standing. Let Judge Ezra make that determination whether we're collaterally stopped or not. Well, this isn't an issue of collateral stop, Your Honor. Rather, the issue is just – the issue is that the Navy believes that it's bound by the prior judgment. So any time some third party is unhappy about, you know, a 20-year-old judgment that may bind a different party, they can't go in and ask the judge to reinterpret his own prior judgment. That would – essentially, I believe, is not allowed for under Rule 60. Obviously, here, by the way, Judge Ezra already denied their attempt to intervene, saying that it was untimely, saying that it would prejudice parties, saying that it would raise a variety of new questions of standing. And even if Judge Ezra could somehow reinterpret his prior judgment to mean that his prior judgment meant the exact opposite of what it actually said it meant, nonetheless, the Navy would still have, at this point, entered into an agreement with Hawaii. So Judge Ezra would also have to then be able to interpret the agreement with Hawaii. Yes, well, it's not unheard of for the district court to reinterpret an old judgment. In fact, we're hearing a case – two cases down in which that occurred from Judge Ezra. I'm not familiar with that case, Your Honor. They'll argue about that. Some of them will agree with you. My impression is that's fairly uncommon, and I actually am not aware of any means under either the rules or statute in which that would be allowed for a third party. You've answered my question. Thank you, Your Honor. Unless the Court has any other questions about the zone of interest prudential standing issue or the third party prudential standing issue or the final judgment question. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Laurie Wada, Deputy Attorney General, on behalf of the State of Hawaii Department of Human Services. Plaintiffs have no standing to bring any suit or any claim regarding the Randolph-Shepard Act because it does not fall under the categories of persons the RSA confers standing in order to bring a suit. They're not a blind vendor. They're not an SLA or a state licensing agency. And here it is, the State of Hawaii Department of Human Services' position that plaintiffs have failed to raise the issues of unrightness and failure to exhaust administrative remedies. In effect, they lack jurisdiction. You know, the problem with arguing rightness is that it soon becomes ripe and you're back in court. I understand what you're saying, but I think Judge Ezra's November 2008 order was correct. They have no standing. You can't get away. May I depart for a second? When I looked at this case, and I was pleased to hear the Navy's response, it looked to me like an economic settlement case if all the parties were willing. In other words, if there's a finite amount of vending that can be sold within this area and you have a competing vendor who you're representing and you have the bow fin, that some economic arrangement might be made so that all parties were happy with the new arrangement and you felt that you had satisfied your obligations. And I gather the State of Hawaii feels that you're on track. Do you agree with the Navy on that? Yes. It's my understanding that we agree. So maybe we should send our circuit mediator in so we can close the deal. Would that be of assistance to you? I believe it would. I was interested in Judge Reinhart's questions about whether or not what difference does the suit make by bow fin. It's my humble opinion, and it could be way off base, but there's, as you have pointed out, Judge Thomas, that it is an economic issue. Bow fin does not. And, look, our economic survival depends on vending. And the Navy, I'm sure, didn't want the bow fin memorial to close down, and probably the State of Hawaii doesn't want it either. But you want to protect your other vendors in the area who say they've been harmed by the vending that's going on at the bow fin. That's the way I read it, that there's likely an economic solution to this. I think we've reached that in our tentative negotiations, pending the signature or acceptance of bow fin. But it's my understanding bow fin does not want to be bound by Judge Ezra's order or the RSA because it precludes them from making a lot of money regarding vending. No hot dogs, no nothing. This particular site, under this particular contract? Under the old contract, they were allowed to do that. They were allowed to sell food in direct competition with the blind vendors at the Arizona memorial. When that became a problem is when the state licensing agency and us stepped in to say you can't do that under the Randolph-Shepard Act. Based on Judge Ezra's November 2008 order, that was stopped. Okay. And so they no longer sell food and beverages in direct competition with my blind vendor. And where is she? You said it's in the proximity of the bow fin. Where, can you tell me exactly? You know, I don't know exact numbers. Half a mile, 100 feet, do you know? I don't know how close it is in that kind of numbers. I do know that it is close enough that the people that were going to bow fin would buy food items before they got to Arizona memorial. And when that was going on at one point in 2007, it created a $50,000 gross loss per month for the blind vendors. And that was substantial. So once that has stopped, I can't say whether or not my blind vendor has recovered $50,000 more a month. I can just say under the Randolph-Shepard Act, it is now being followed and all food vending, beverages, periodicals, newspapers, tobacco is no longer being sold at bow fin. Right, but on the other hand, if the bow fin had to shut down because it, as a nonprofit, it needed the vending to survive, that doesn't help your vendor either because it reduces traffic. That's what I'm saying. When I read through the briefs, I said, you know, it looks like there's an economic solution to this rather than people saying you have to do this, you don't have to do this and having a bad result for both the vendor and the bow fin. And I understand. I agree with that. I think we have reached that economic. I, you know, there is something that I don't think is in the record, but bow fin also sells souvenirs and bag check services. That technically is under the Randolph-Shepard Act. We are not fighting that. We understand that they're a nonprofit. We think they're doing a very good service. We're not completely unreasonable, is what I'm trying to say, as far as enforcing the Randolph-Shepard Act. And I think we can work it out, which, in the state's opinion, could make this moot. Thank you. Thank you. I'll make four brief points. On Ms. Wada's comments about the history, what happened is to visualize the bow fin, there's a new Arizona memorial with a consolidated ticket counter where 1.5 to 1.6 million tourists go to visit the Arizona a year. The bow fin, the facility, blind letter facility is right there on the left. And so all the Arizona memorial tourists turn left and they go by the blind letter facility. The bow fin is 1,000 feet to the right and they get about 300,000 of those tourists. They get about 20% of those tourists. So that's how you visualize it. We get a small portion of what the blind vendors get. Now, why this came up was a guy put up a white tent under a lease it got from the government between the bow fin and the Arizona and was selling all kinds of things, including food. And that's what caused all the problem with the state and the blind vendors because they were not only stealing from the blind vendors, they were stealing from the bow fin. And they got shut down. And then in the interim, they rebuilt the Arizona memorial, the ticket counter and booth area. And in that process, there was a disruption for both the blind vendors and the bow fin. And that's why both of them lost considerably during that period. But that's that part. Your honors asked me about current negotiations. As I said, there are none. There were negotiations last year about the lease. The bow fin hasn't signed it. There's a tentative arrangement between the state and the bow fin regarding what the bow fin can sell and what the blind vendors can sell. But all of that, including the lease, is subject to the outcome of this appeal. Everybody understands that that's what the circumstances are. The history. What Judge Thomas asked is, isn't this really an economic dispute? It's no good principle involved. I mean, you're not opposed to the application of the Randolph-Shepard Act if you manage to get the same income you got before. So it's a question of can you arrive at a financial settlement or are you saying that the finances would be totally different depending on whether. . . Why is it that you can't, maybe with a little help, get together and resolve the financial dispute? The reason it's a financial dispute, we don't dispute the Randolph-Shepard application. We dispute that we have to have a blind vendor, which means we don't have to comply with any of the Randolph-Shepard requirements. So that's our position on that. But you're right. It's an economic one because bow fin's economic survival and being able to do what it does to tell the story about the Valor in the Pacific, and it can only do if it's able to sell things to supplement how it operates.  That is essentially satisfactory, but it's held up. . . Those are terms you can live with. I don't know whether they're as good as you'd like, but they're negotiated terms that you could live with. But you say not if Randolph-Shepard doesn't apply. Well, if we have standing, then that negotiation is going to be much better than where it is now. Well, we're going to be at least in a bargaining position. I'm not saying, and Lujan says, I don't necessarily win when I go back for redress, but at least I have the argument. But you say you have a better negotiating position, but you were in a negotiation. I mean, they're not taking the position that you can't negotiate because you don't have standing. They're saying, yes, we're willing to negotiate, and in fact we have a tentative settlement that's acceptable to both sides. It's only a tentative settlement pending the outcome of this agreement. Because you think with the standing you get a better deal. Absolutely. Okay. Absolutely. And I forget who mentioned it, but maybe it was Your Honor. The Navy would not be doing what they're doing but for Judge Ezra's decision. If you look at the March 30 letter, that's what they talk about. Because Judge Ezra ruled, we agree with the state, we're going to impose the Randolph-Shepard Act on both ends. And if that didn't happen or if that got reversed or Judge Ezra said, I don't think the blind vendor facility is required on both ends, I think you'd see the Navy take a much different tact. Thank you. The case to start again will be submitted.
judges: Reinhardt, Thomas, Paez